UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTIAN M. BRONDON,

                          Plaintiff,              09-CV-6166T

              v.                                  **DECISION
                                                  and ORDER**

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

                          Defendant.
_____

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

              Counter-claim Plaintiff,

              v.

CHRISTIAN M. BRONDON,

              Counter-claim Defendant.
_____

## INTRODUCTION

Plaintiff Christian Brondon ("Brondon") brings this action against defendant The Prudential Insurance Company of America ("Prudential") seeking payment of life insurance benefits that he claims are owed to him by the defendant following the death of his wife Lois Brondon, ("Mrs. Brondon"). Specifically, Brondon, who is the named beneficiary of the policy held by his wife, claims that upon the death of his wife, and his proper and timely application for benefits under the policy, Prudential became obligated to pay the $50,000.00 death benefit to him under the policy. He claims

that in denying coverage for Mrs. Brondon's death, Prudential breached the insurance contract, and violated the Employee Retirement Income Security Act of 1974 ("ERISA").

Prudential denies the plaintiff's claims, and contends that Mrs. Brondon's failure to accurately disclose an underlying heart condition in her application for insurance coverage warranted the recision of her insurance policy, and the denial of plaintiff's claim. Defendant has brought a counter-claim against the plaintiff seeking a declaration that it owes no coverage to plaintiff under Mrs. Brondon's insurance policy, and that it rightfully rescinded the policy upon learning that Mrs. Brondon had failed to disclose in her insurance application a material, underlying heart condition.

The parties now cross-move for summary judgment arguing that there are no material issues of fact in dispute, and that judgment may be rendered as a matter of law. Plaintiff seeks judgment in his favor, arguing that as a matter of fact and law, Mrs. Brondon did not lie on her application, and under the terms of the policy, plaintiff is entitled to coverage under the death benefit provision. Prudential seeks judgment in its favor contending that it acted properly in rescinding plaintiff's policy once it learned that she had omitted material information from her application, and that it appropriately declined coverage under the terms of the policy.

For the reasons set forth below, I grant plaintiff's motion for summary judgment, deny defendant's motion for summary judgment, and issue judgment in favor of Brondon in the amount of $50,000.00 plus attorneys' fees and costs, and prejudgment interest.

## BACKGROUND

Plaintiff Christian Brondon is the beneficiary of a group term life insurance policy issued to his wife Lois Brondon ("Mrs. Brondon"). The policy, which provided a $50,000.00 death benefit, was issued by defendant Prudential Insurance Company of America to eligible members of the National Education Association. Mrs. Brondon applied for coverage in October, 2006, and became covered under the policy effective December 1, 2006.

On May 18, 2007, Mrs. Brondon, who was 49 years of age, died suddenly and unexpectedly while officiating at a soccer game. The cause of death listed on her death certificate was "myocardial fibrosis and right ventricular dilation." On August 8, 2007, plaintiff, as beneficiary of his wife's life insurance policy, filed a notice of claim with Prudential seeking payment of the $50,000.00 death benefit. Prudential reviewed the plaintiff's claims, and on several occasions requested additional medical evidence regarding Mrs. Brondon from the plaintiff.

On January 24, 2008, after reviewing Mrs. Brondon's medical records, the defendant denied plaintiff's claim for benefits on grounds that Mrs. Brondon had failed to disclose a heart condition

when she applied for life insurance coverage, and that had she disclosed the condition, she would not have been approved for coverage. Specifically, Prudential stated that the plaintiff had failed to disclose that she suffered from "mild aortic sclerosis and mitral valve prolapse with mild mitral insufficiency."

Brondon appealed the denial of his claim to the Appeals Department of Prudential, which affirmed the denial of his claim. Thereafter, plaintiff filed the instant action in New York State Supreme Court, Monroe County, seeking payment of the benefits available under Mrs. Brondon's life insurance policy. Defendant removed the action to this court, and thereafter filed a counterclaim against the plaintiff seeking a declaration that it does not owe plaintiff any coverage under the policy due to the material misrepresentations made by Mrs. Brondon in applying for her life insurance coverage.

DISCUSSION

I.   <u>Summary Judgment Standard</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary

4

judgment is sought. <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. <u>Scott</u>, 550 U.S. at 380 (citing <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986)). In the instant case, the parties agree that there are no material facts in dispute, and that judgment may be rendered as a matter of law.

    II. <u>Standards of review applicable to ERISA actions</u>.

    When considering an ERISA claim alleging improper denial of benefits, the Court must first determine the appropriate standard of review to conduct its analysis of the ERISA plan administrator's decision to deny benefits. In general, a <u>de</u> <u>novo</u> standard of review will apply to the plan administrator's determination, unless the plan grants authority to the administrator to use his or her discretion to construe the terms of the plan and determine eligibility for plan benefits. <u>Firestone Tire and Rubber Co., v. Bruch</u>, 489 U.S. 101, 115 (1989). In <u>Firestone</u>, the Supreme Court held that:

> a denial of benefits challenged under [ERISA] § 1132(a)(1)(B)is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan.

<u>Firestone</u>, 489 U.S. at 115.

Under a de novo standard of review "the Court will review 'all aspects of [the] administrator's eligibility determination, including fact issues, de novo.'" O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 697 F.Supp.2d 474, 476 (W.D.N.Y., 2010)(quoting Troy v. Unum Life Ins. Co. of Am., 2006 WL 846355 at *4, (S.D.N.Y., March 31, 2006)).  Under this standard, plan terms are "given their plain meanings," Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1084 (1st Circ., 1990), and ambiguities in plan language are to be construed in favor of the claimant. Masella v. Blue Cross & Blue Shield of Connecticut, Inc., 936 F.2d 98, 107 (2nd Circ., 1991); Rudolph v. Joint Industry Bd. of Elec. Industry, 137 F.Supp.2d 291, 300 (S.D.N.Y., 2001).  Under a de novo standard of review, no deference is given to the plan administrator's interpretation of the plan.  Katzenberg v. First Fortis Life Ins. Co., 500 F.Supp.2d 177, 193-94 (E.D.N.Y., 2007)(citing Slupinski v. First Unum Life Ins. Co., 2005 WL 2385852, at *5 (S.D.N.Y. Sept. 27, 2005).  Indeed, under de novo review, "the fiduciary must show that the claimant's interpretation is unreasonable and that its own interpretation is the only one that could fairly be placed on the policy." Rudolph, 137 F.Supp.2d at 300 (citing Alfin, Inc., v. Pacific Ins. Co., 735 F.Supp. 115, 119 (S.D.N.Y., 1990).

If a benefits plan grants the plan administrator discretionary authority to determine eligibility for benefits, the Second Circuit

has held that an arbitrary and capricious standard of review will be applied to the administrator's determination. <u>Kinstler v. First Reliance Standard Life Ins. Co.</u>, 181 F.3d 243, 249-252 (2d Cir. 1999). Under the arbitrary and capricious standard, a denial of benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law." <u>Kinstler</u>, 181 F.3d at 249 (2d Cir. 1999), quoting <u>Pagan v. NYNEX Pension Plan</u>, 52 F.3d 438, 442 (2d Cir. 1995); <u>Fuller v. J.P. Morgan Chase & Co.</u>, 423 F.3d 104, 107 (2nd Cir. 2005). To establish that a Plan Administrator's decision is supported by "substantial evidence," the administrator must demonstrate that the decision is supported by "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator] . . . ." <u>Celardo v. GNY Automobile Dealers Health and Welfare Trust</u>, 318 F.3d 142, 146 (2nd Cir. 2003). There must be more then a "scintilla" of evidence to support the Plan Administrator's decision, but there need not be a preponderance of the evidence, provided the evidence relied upon by the Plan Administrator is reliable. <u>Ceraldo</u>, 318 F.3d 146 (citing <u>Miller v. United Welfare Fund</u>, 72 F.3d 1066, 1072 (2nd Cir 1995).


   III. <u>The Plan Administrator's Benefits Determination is Subject to an 'de novo' standard of review</u>.

     Based on the language found in the life insurance policy issued to Mrs. Brondon, I find that because the policy does not

provide discretion to the plan administrator to determine eligibility for benefits or construe plan terms, the plan administrator's decision to deny benefits to the plaintiff is subject to de novo review.

To establish that a plan administrator's benefits determination is subject to an arbitrary and capricious standard of review, the plan must explicitly reserve discretionary authority to make such a determination to the plan administrator. Kinstler, 181 F.3d at 249. While the plan language need not use "magic words" such as "discretion" or "deference" in describing the plan administrator's authority, the language imparting discretionary authority must be clear and explicit. Id. at 251.

The only language of the insurance policy cited by the defendant in support of its claim that the plan administrator is vested with discretionary authority to make benefits determinations and construe plan terms in this case is a passage related to instances when the insurer may request additional medical information from an applicant prior to acceptance into the plan for purposes of determining eligibility to enroll in the plan. Specifically, the passage states:

**When evidence is required**: You may be required to provide evidence of insurability. This requirement will be met when

Prudential decides the evidence is satisfactory, prior to issuing coverage.[1]

See NEA Insurance Booklet and Certificate (hereinafter "the Prudential Policy") at p. 5, Attached as Exhibit "A" to the January 25, 2010 Affidavit of Jenny Coppola (Emphasis in the original)

This passage, however, does not evince a clear intent of the insurer to provide the plan administrator with discretion to determine whether or not plan participants are eligible for benefits, or to construe plan terms. Initially I note that the cited language pertains not to benefit determinations or construction of ambiguous terms, but instead relates to eligibility for coverage under a group plan. Because this language does not confer discretionary authority with respect to benefits determinations or plan interpretation, it does not support a finding that the plan administrator is entitled to deferential review. See Kinstler, 181 F.3d at 250 (benefits determinations are reviewed de novo by the court "unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.")(emphasis in the original); See also, Sanders v. Scheideler, 816 F.Supp. 1338, fn. 1 (W.D.Wis., 1993) (authority to accept or

---

[1] Indeed, according to the plan terms, an applicant will not be approved for inclusion into the plan unless, inter alia, the applicant has "met any evidence requirement for Member Insurance . . . ." See the Prudential Policy at p. 5

reject applications for insurance not indicative of whether or not plan administrator has discretionary authority to interpret claim terms or determine eligibility for benefits); but see Brilmyer v. University of Chicago, 431 F.Supp.2d 154, 161 (D.Mass., 2006) (LTD plan was subject to arbitrary and capricious standard of review where plan provided that change in enrollment was not effective until administrator "approves your proof of good health.")

Moreover, the policy language cited by the defendant is neither clear nor unambiguous. The policy states that in cases where Prudential asks for evidence of insurability, the requirement to provide such evidence will be met when Prudential "decides the evidence is satisfactory, prior to issuing coverage." (Emphasis added). See Prudential Policy at p. 5. Use of the term "satisfactory" when describing the proof or evidence required to be submitted to a plan administrator has widely been held in several Circuit Courts of Appeal, including the Second Circuit, to be ambiguous as a matter of law for purposes of determining whether or not an administrator has discretionary authority to make benefits determinations. For example in Kinstler, the court held that the language requiring "satisfactory proof" to be submitted to the administrator prior to a claim being approved failed to establish that the administrator exercised discretionary authority to approve claims, given that objectively, no administrator of any plan would ever approve a claim without "satisfactory" proof. Kinstler, 181

F.3d at 252.  As stated by the court in <u>Kinstler</u>, use of the term "satisfactory" is "an inadequate way to convey the idea that a plan administrator has discretion."  <u>Id.</u>  <u>See also</u>, 62 F.Supp.2d 731, 737-38 (N.D.N.Y., 1999)("language ... requiring "satisfactory proof" of claim is insufficient to reserve in [the plan administrator] the discretionary authority necessary to invoke the arbitrary and capricious standard of review"); <u>Gittings v. Tredegar Corp.</u>, 713 F.Supp.2d 746, 749 (N.D.Ill., 2010)(use of term "proof satisfactory to the [plan administrator]" did not establish plan administrator's discretion, and thus <u>de</u> <u>novo</u> review of plan administrator's determination was appropriate); <u>Feibusch v. Integrated Device Technology, Inc. Employee Ben. Plan</u>, 463 F.3d 880, 883-884 (9th Circ., 2006); <u>Gallagher v. Reliance Standard Life Ins. Co.</u>, 305 F.3d 264, 270 (4th Circ., 2002).[2]  Because Prudential has not used clear and explicit language in the policy issued to Mrs. Brondon to authorize the plan administrator to use his or her discretion in making benefits determinations, I find that <u>de</u> <u>novo</u> review of the plan administrator's decision to deny benefits to the

_____

[2] Some courts have determined that plan language requiring submission of "satisfactory" proof does trigger deferential review.  <u>See</u> <u>e.g.</u> <u>Murray v. Hartford Life & Acc. Ins. Co.</u>, 623 F.Supp.2d 1341, 1351, (M.D.Fla., 2009);<u>Serauskus v. Sun Life Assurance of Canada</u>, 205 F.Supp.2d 1369 (N.D.Ga., 2001).  This court, however, is not bound by any court having made such a determination.  Indeed this court is bound by Second Circuit precedent, which establishes that use of the term "satisfactory" when describing evidence required to be submitted to a plan administrator, does not trigger deferential review.

plaintiff and rescind the policy issued to Mrs. Brondon is appropriate.

This conclusion is not altered by the fact that the policy at issue also contains a contestablity clause which allows Prudential to contest statements made by an applicant for insurance within the first two years of insurance coverage. See Prudential Policy at p. 12. Specifically, the contestability clause allows Prudential to challenge the validity of the insurance issued to the insured on grounds that the insured misstated facts in the insurance application which induced the insurer to issue coverage when it otherwise would not have, had the insurer known of the true facts. Id. There is no question that an insurer may include such a contestability clause in a policy of insurance, as such a clause provides a remedy to an insurer where applicants have misstated or lied about material facts in an application for insurance coverage. See Security Life Ins. Co. of America v. Meyling, 146 F.3d 1184, 1191, (9th Circ., 1998)("ERISA must provide a rescission remedy when an insured makes material false representations regarding his health."). Accordingly, while the contestability provision validly allows Prudential to reconsider the statements made by Mrs. Brondon in connection with her application for insurance, and to determine whether or not those statements were truthfully made, the clause does not alter the standard of review that is applied to the plan

administrator's ultimate determination that benefits were not payable, and that the policy issued was subject to recision.

The Prudential Policy further states that if a claim is denied by the plan administrator, the claimant may have the denial "reviewed" by Prudential. Prudential Policy at p. 20. The fact that Prudential can "review" a denial of claim, does not establish that Prudential has vested the plan administrator with discretionary authority to grant or deny benefits, or construe plan terms. <u>Firestone</u>, 489 U.S. at 111.

IV. The Plan Administrator improperly denied plaintiff's claims for benefits.

In this case, Prudential, acting as the plan administrator, denied plaintiff's claim for benefits on grounds that the decedent, Mrs. Brondon, had made misstatements of fact in her application for benefits, and that had Mrs. Brondon not made such misstatements, Prudential would not have issued life insurance to her. Specifically, Prudential claims that Mrs. Brondon failed to disclose that she suffered from "heart trouble" in her application for insurance benefits, and that because of this omission, Prudential issued her a life insurance policy with a $50,000.00 death benefit. Prudential contends that had it known that Mrs. Brondon suffered from "heart trouble" it would not have issued the policy to Mrs. Brondon.

I find, however, that because the question of whether or not Mrs. Brondon suffered from heart trouble is ambiguous, her answer

13

to that question may not be used to retroactively deny her beneficiary's claim for benefits, and may not be used to rescind the policy that was issued to her. I further find that Mrs. Brondon's answer to that question did not constitute a misstatement, and therefore, her answer could not be used to deny benefits or rescind the policy.

    A.    The Defendant's insurance Application Contained an Ambiguous question, and therefore the decedent's answer to that ambiguous question can not be used to establish <u>any misrepresentation by her</u>.

Prudential claims that Mrs. Brondon made a material misrepresentation on her application for life insurance, and that had she not misrepresented her health condition, she would not have been issued life insurance by the insurer.

The insurance application at issue asked whether or not the applicant was a smoker, and asked the applicant to certify that:

> I have never been diagnosed with, or taken medication for, any of the following: <u>heart trouble</u>, high blood pressure, cancer or tumors, lung, liver, or kidney disorder, diabetes, disease of the brain or nervous system, disorder of the immune system or mental disorder.

<u>See</u> Insurance Application Form completed by Lois Brondon, Attached as Exhibit "E" to the January 29, 2010 Affidavit of Sarah Merkel (Docket item no. 18-8), at p. 14. (emphasis added). No other health related questions were asked on the application form.

Prudential claims that Mrs. Brondon misrepresented her health condition because she failed to disclose that she did indeed suffer

14

from "heart trouble", a term that is not defined in either the application or the insurance plan itself. According to Prudential, Mrs. Brondon suffered from heart trouble because a June 30, 2006 echocardiogram suggested that she suffered from mild aortic sclerosis and mitral valve prolapse with mild mitral insufficiency.

I find, however, that the question as to whether or not Mrs. Brondon suffered from "heart trouble" is ambiguous, and therefore, her claim that she did not suffer from heart trouble can not, as a matter of law, be used to establish that she misrepresented her health condition. Accordingly, the alleged misrepresentation can not can not serve as the basis for the recision of her life insurance policy. It is well settled under New York law that an answer to an ambiguous question on a life insurance application may not serve as a basis for a claim of misrepresentation by the insurer. <u>Guideone Specialty Mutual Insurance Co. v. Congregation Bais Yisroel</u>, 381 F.Supp.2d 267, 274 (S.D.N.Y. 2005)("An answer to an ambiguous question cannot be the basis of a claim of misrepresentation where a reasonable person in the position of the insured could have rationally interpret the question as the insured did."); <u>First Financial Ins. Co. v. Allstate Interior Demolition Corp.</u>, 193 F.3d 109, 118(2nd Circ., 1999); <u>Bleecker Street Health & Beauty Aids, Inc. v. Granite State Ins. Co.</u>, 38 A.D.3d 231, 232 (N.Y.A.D. 1st Dept., 2007). Moreover, the determination of whether or not a question is ambiguous is a question of law for the court

to decide.  <u>Guideone Specialty Mutual Insurance Co.</u>, 381 F.Supp.2d at 274; <u>Fanger v. Manhattan Life Insurance Company of New York, N.Y.</u>, 273 A.D.2d 438, 439 (N.Y.A.D. 2nd Dept., 2000).

In this case the question of whether or not the applicant suffered from heart trouble is ambiguous because the term "heart trouble" is nowhere defined in the application, insurance plan, or summary of plan provisions.  Unlike the other conditions listed in the application question, which ask if the applicant suffers from a specific disorder or disease, such as "high blood pressure," "cancer," "tumors," "diabetes," "lung, liver, or kidney disorder," "disease of the brain or nervous system," "disorder of the immune system" or "mental disorder," the question regarding whether the applicant suffers from, has been diagnosed with, or takes medication for "heart trouble" is ambiguous.  There is no evidence in the record that "heart trouble," unlike conditions such as cancer, diabetes, or high blood pressure, is a recognized diagnosis in the medical field.  Nor is there evidence in the record to suggest that there are specific drugs or medications that are prescribed to treat "heart trouble."  Because what constitutes "heart trouble" could be rationally interpreted differently by reasonable people, I find the term is ambiguous, and under well established contract law, the ambiguity must be construed against the insurer.  <u>Fanger</u>, 273 A.D.2d at 439.  Accordingly, I find that Prudential's question as to whether or not the applicant suffers

from "heart trouble" is ambiguous, and Mrs Brondon's answer to that question can not be used to rescind her life insurance policy.

My finding that the term "heart trouble" is ambiguous is in accord with the New York State Appellate Division decision in Fratello v. Savings Bank Life Insurance Fund, 186 A.D.2d 1061 (N.Y.A.D. 4th Dept., 1992). In Fratello, the Appellate Division held that a question on an insurance policy asking whether or not the applicant suffered from "heart trouble" was ambiguous on grounds that it was undefined, and any answer to that question could not be used by the insurer to allege misrepresentation. Id.

Because the term "heart trouble" used in Prudential's application is ambiguous, Mrs. Brondon's certification that she did not suffer from heart trouble may not be used by Prudential in an attempt to establish that she misrepresented her health condition.

B. Mrs. Brondon did not make a misstatement of fact or opinion when she indicated on her application that she did not suffer from "Heart Trouble".

Although I find that Prudential's question relating to heart trouble is ambiguous as a matter of law, and therefore Mrs. Brondon's answer to that question may not be used as evidence of any representation, I additionally find, as a matter of fact, that Mrs. Brondon did not make a misstatement of fact or opinion when she certified that she did not suffer from "heart trouble." Accordingly, it was improper for Prudential to deny plaintiff's

claim for benefits and rescind Mrs. Brondon's life insurance policy based on her alleged misstatements.

To establish that an applicant made a misrepresentation as to his or her health condition on an application for insurance, the insurer must demonstrate that the applicant made a false statement of fact. New York Insurance Law § 3105(a). "A misrepresentation may be a false affirmative statement or a failure to disclose where a duty to disclose exists." <u>Philadelphia Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP</u>, 379 F.Supp.2d 442, 452 (S.D.N.Y., 2005). Where an application question asks for a mater of opinion, however, as opposed to asking a factual question, "the applicant's response cannot be said to be a misrepresentation unless the applicant has not truthfully portrayed his or her mental state." <u>Chicago Ins. Co. v. Halcond</u>, 49 F.Supp.2d 312, 316 (S.D.N.Y., 1999).

In the instant case, I find that the defendant's question, asking whether or not the applicant suffered from, had been diagnosed with, or took medication for "heart trouble" asked for the applicant's opinion as to whether or not any of those events had taken place, and therefore, the applicant's good-faith belief as to whether or not she suffered from, had been diagnosed with, or took medication for "heart trouble" controls. See <u>e.g.</u> <u>Chicago Ins. Co.</u>, 49 F.Supp.2d at 315 (noting the "New York rule" that a policy may not be avoided where an applicant had a "good faith"

belief for answering "yes" to question asking if the applicant was "in good health").  New York has long recognized that questions asking whether an insured is "in good health" are not factual questions, but instead seek the applicant's opinion regarding his or her health.  Berkshire Life Ins. Co. v. Owens, 910 F.Supp. 132, 134 (S.D.N.Y., 1996)("It is well established in New York law that such statements [of general good health], as distinguished from answers to purely factual questions ... call for statements of opinion."); Process Plants Corp. v. Beneficial National Life Ins. Co., 385 N.Y.S.2d 308, 312 (N.Y.A.D. 1st. Dept., 1976)(where insurance applicant is asked for a matter of opinion, such as whether or not the applicant is "in good health" the actual falsity of the applicant's statement, if made in good faith, is without legal consequence.);  Bronx Sav. Bank v. Weigandt, 136 N.E.2d 848, 850 (N.Y., 1956)("A representation as to good health in an application for insurance . . . is not an affirmation of fact and does not provide a basis for rescission in the absence of proof of actual fraud.)

Similarly, the question in the defendant's insurance application asking whether or not the applicant suffered from, has been diagnosed with, or is taking medication for  "heart trouble" is a general question asking for an opinion, given that the term "heart trouble" was not defined by Prudential, and has not been shown to have any generally accepted meaning within the medical

community or population at large.  The application thus left it up to the applicant to determine what constituted "heart trouble," and whether or not the applicant suffered from any condition that constituted "heart trouble."  As such, the question regarding "heart trouble" is glaringly different than the questions asking whether or not the applicant suffered from "high blood pressure," "cancer," or "diabetes."  Each of those conditions does have a generally accepted meaning within the medical community and the population at large, and accordingly, a question as to whether or not the applicant suffers from, has been diagnosed with, or takes medication for any of those conditions constitutes a factual question.

That the question of whether or not the applicant suffered from "heart trouble" seeks the applicant's opinion is virtually self evident.  Because there is no definition of "heart trouble" contained in the application or policy, and neither party has established that the term "heart trouble" has a recognized meaning in the medical field or in the general population, there is no way for an applicant to know what type of heart condition would constitute "heart trouble" as a matter of fact.  Indeed, under such a scenario, only Prudential would be allowed to define what constitutes "heart trouble;" would be allowed to do so after a claim is made; and would be allowed to change and amend the definition on a case by case basis for the purpose of contesting

and rescinding any policy in circumstances where there is retroactive evidence of any heart abnormality, no matter how common or benign, that the applicant may have known of. Such a holding would be manifestly unjust, and would defeat the purpose of protecting a beneficiary's right to a fair consideration of his or her claim for benefits.

Because Mrs. Brondon was asked her opinion as to whether or not she suffered from "heart trouble," and because, as set forth below, the evidence in the record suggests that Mrs. Brondon believed in good faith that she did not suffer from heart trouble, I find that Prudential has failed to establish that she made any misrepresentation when she answered that she did not suffer from that condition.

The medical record with respect to any heart conditions suffered by the plaintiff does not objectively establish that she suffered from any condition that was serious enough to be considered "heart trouble" by her. The record suggests, based on comments she made to her cardiologist, that Mrs. Brondon knew that she had a mitral valve prolapse ("MVP")[3] since childhood. The

---

[3] Mitral valve prolapse is described by the National Institutes of Health ("NIH") on its informational "MedlinePlus" website as "a heart problem in which the valve that separates the upper and lower chambers of the left side of the heart does not close properly." According to the NIH, "[m]ost of the time, the condition is harmless and does not cause symptoms" and "[m]ost of the time, . . . treatment is not needed." http://www.nlm.nih.gov/medlineplus/ency/article/000180.htm last visited November 4, 2010. This definition is in accord with the

record also suggests that although Mrs. Brondon had a heart murmur and occasionally felt heart palpitations, possibly as a result of her MVP, these symptoms did not restrict any of her activities. As a result of her MVP, Mrs. Brondon typically took antibiotics prior to dental or medical procedures as a precautionary measure to prevent a bacterial endocarditis infection.[4]

In June, 2006, prior to applying for insurance, she had an echocardiogram of her heart performed by her cardiologist, which revealed, in the cardiologist's opinion, that Mrs. Brondon suffered from mild aortic sclerosis with trivial aortic insufficiency and mitral valve prolapse with mild mitral insufficiency. The cardiologist did not recommend any treatment for Mrs. Brondon's condition other than continuing to take antibiotics prior to medical or dental procedures, and did not limit in anyway Mrs. Brondon's activities.

---

explanation of MVP provided by Prudential's Medical Director, Dr. Albert Kowalski, who stated that MVP is "a common heart disorder" that "occurs when the valve between your heart's left upper chamber . . . and left lower chamber . . .doesn't close properly." (Record at p. 30)

[4] The practice of taking antibiotics prior to dental or medical procedures is known as endocarditis prophylaxis. Although it was previously recommended that persons with MVP practice endocarditis prophylaxis, such recommendations are no longer in force. http://www.nlm.nih.gov/medlineplus/ency/article/000180.htm last visited November 4, 2010. Prudential's Medical Director acknowledged in his review of Mrs. Brondon's medical records that preventative taking of antibiotics is no longer recommended for most persons with MVP. (Record at p. 30)

Additionally, there is no evidence in the record that Mrs. Brondon's heart conditions affected the functioning of her heart. Mrs. Brondon's primary physician, Dr. Herbowy stated in response to Prudential's initial denial of plaintiff's claim, that the echocardiogram findings from June of 2006 were of "no clinical significance," and were "essentially ubiquitous given today's echocardiogram technology." He stated unequivocally that Mrs. Brondon "had absolutely no symptoms referable to cardiac disease or heart trouble." Indeed, even Prudential's Medical Director, Dr. Albert Kowalski, who reviewed Mrs. Brondon's entire medical record following her death, stated that in his opinion, "with a reasonable degree of medical certainty, the insured's mitral valve prolapse did not have a significant impact on the functioning of her heart." (Prudential Administrative Record, attached as Exhibit E to the January 29, 2010 Affidavit of Sara Merkel at p. 30).

In sum, even assuming that Mrs. Brondon knew of her MVP, there is no evidence to suggest that she considered the condition to be "heart trouble." Although Mrs. Brondon took antibiotics prior to dental and medical procedures as a precautionary step to prevent a potential heart infection, she did not take any medication to treat her MVP. Nor was she diagnosed with "heart trouble." Both Prudential and Mrs. Brondon's physicians agreed that her MVP had no effect on her daily living activities, and that she was under no medical restriction of any kind. Accordingly, there is no evidence

to suggest that Mrs. Brondon believed that she suffered from "heart trouble." Given her medical history, her belief that she did not suffer from "heart trouble" is both subjectively and objectively reasonable.

Having reviewed de novo the plan administrator's decision to rescind Mrs. Brondon's life insurance policy I find that Prudential improperly rescinded her policy, and that Mrs. Brondon's policy was not subject to recision for any reason. I further find that plaintiff established entitlement to death benefits under the policy, and therefore, Prudential improperly denied plaintiff's claim for benefits. I therefore grant plaintiff's motion for summary judgment and deny the defendant's motion for summary judgment.

V. The defendant's decision to rescind Mrs. Brondon's policy and deny plaintiff's claim for benefits was arbitrary and capricious.

Although I find that the defendant improperly rescinded Mrs. Brondon's policy and improperly denied plaintiff's claim for benefits under a de novo standard of review, I find that the same result obtains under an arbitrary and capricious standard of review. Accordingly, even if the plan administrator's decision to deny benefits was subject to deferential review, I find that Prudential's denial of benefits was arbitrary and capricious.

As stated above, under an arbitrary and capricious standard of review, a denial of benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law." Kinstler, 181 F.3d at 249 (quoting Pagan, 52 F.3d at 442; Fuller, 423 F.3d at 107). In the instant case, I find that because the question as to whether or not Mrs. Brondon suffered from "heart trouble" is ambiguous as a matter of law, Prudential committed legal error when it used her answer to that question to rescind her policy. Because it was incorrect as a matter of law to rescind the policy, and because plaintiff established that he was entitled to the death benefit offered under the policy, Prudential's denial of plaintiff's insurance claim was arbitrary and capricious.

Even assuming that the question of whether or not plaintiff suffered from "heart trouble" was unambiguous, the plan administrator's determination that Mrs. Brondon misstated facts was also incorrect as a matter of law. Because the question asked for Mrs. Brondon's opinion as to whether she suffered from, had been diagnosed with, or had taken medication for "heart trouble," and because she answered in good faith that she did not suffer from heart trouble, the plan administrator erred as a matter of law in finding that Mrs. Brondon had misstated facts regarding her health condition.

VII. <u>Attorney's fees and costs and pre-judgment interest.</u>

Having found that Prudential's decision to rescind Mrs. Brondon's life insurance policy and deny Mr. Brondon's claim for benefits was improper as a matter of fact and law under either a <u>de novo</u> or arbitrary and capricious standard of review, I turn now to plaintiff's motion for fees, costs, and retroactive interest. Pursuant to 29 U.S.C. § 1132(g)(1), a prevailing party in an ERISA case may be entitled to attorney's fees and costs. Courts consider several factors in determining whether or not a party is entitled to fees and costs including:

> (1)the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

<u>Hardt v. Reliance Standard Life Ins. Co.</u>, 130 S.Ct. 2149, fn.1 (U.S., 2010).

In the instant case, I find that an award of attorneys' fees and costs is appropriate. As set forth above, Prudential's decision to deny plaintiff's claim for benefits lacked merit on both legal and factual grounds. While I find that Prudential did not act in bad faith in investigating plaintiff's claim, I find

26

that Prudential has the ability to satisfy an award of fees and costs, and also that an award of fees will act as a deterrent to plan administrators and insurers who attempt to deny benefits or rescind insurance policies based on answers by applicants to ambiguous questions proffered by the insurers. To that end, despite the fact that plaintiff's case was brought on behalf of himself alone for the purpose of securing individual benefits, the plaintiff's vindication of his rights under ERISA has the effect of benefitting similarly situated plan beneficiaries by establishing that insurers may not use answers to ambiguous questions against plan participants or beneficiaries.

The parties are strongly encouraged to stipulate to an appropriate fee award. Absent such agreement, plaintiff shall make an application to the court within 30 days of the date of this Order to fix the appropriate amount of fees and costs that shall be awarded. The defendant shall have 20 days from the date of plaintiff's application to file objections.

An award of pre-judgment interest in an ERISA case is also generally left to the discretion of the district court. <u>Jones v. UNUM Life Insurance Company of America</u>, 223 F.3d 130, 139 (2nd Circ., 2000). "[T]he factors . . . to consider in determining whether to award prejudgment interest are '(I) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award,

(iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.'" <u>Slupinski v. First Unum Life Ins. Co.</u>, 554 F.3d 38, 55 (2nd Circ., 2009)(<u>quoting</u> <u>Jones</u>, 223 F.3d at 139). Considering each of these factors, I find that the plaintiff is entitled to an award of pre-judgment interest. An award of pre-judgment interest will serve to make the plaintiff whole given the lengthy wait he has endured, both in the claims process and this litigation, to receive his benefits. Moreover, given the remedial purpose of ERISA, and considerations of fairness, I find that plaintiff is entitled to pre-judgment interest, and that such an award will not create a windfall for him, but instead, will return him to the position of having been granted his rightful benefits in a timely fashion.

CONCLUSION

For the reasons set forth above, I grant plaintiff's motion for summary judgment and for attorney's fees, and deny defendant's motion for summary judgment. I Order Judgment in favor of the plaintiff in the amount of $50,000 plus prejudgment interest and attorneys' fees and costs.

**ALL OF THE ABOVE IS SO ORDERED.**

                              s/Michael A. Telesca
                         MICHAEL A. TELESCA
                         United States District Judge


Dated:    Rochester, New York
          November 9, 2010

28